## Case No. 853.

BANK OF ALEXANDRIA v. SWANN.

[4 Cranch, C. C. 136.] [1]

Circuit Court, District of Columbia. April Term, 1831. [2]

NEGOTIABLE INSTRUMENTS—NON-PAYMENT—NOTICE TO INDORSER—SPECIAL VERDICT.

1. Upon a special verdict, the court cannot, from the facts found, infer other facts which the jury might have inferred, but have not found.

[See Barnes v. Williams, 11 Wheat. (24 U. S.) 415.]

2. Notice of the non-payment of a note for $1,457, is not notice of the non-payment of a note for $1,400.

[See note at end of case.]

3. Notice of the nonpayment of a note, payable in the Bank of Alexandria, D. C., put into the post-office at Alexandria on the day after the last day of grace, addressed to the indorser · in Washington, D. C., was too late, as the bank closed at 3 o'clock, P. M., and the mail for Washington did not close in Alexandria until 9 o'clock, P. M.

[See note at end of case.]

At law. Assumpsit, by [the Bank of Alexandria] the indorsee against [Thomas Swann] the indorser of the note of H. Peake, for $1,400, payable and negotiable in the Bank of Alexandria, dated 23d June, 1829, at sixty days after date.

Special verdict.

The jury find the note for $1,400 in the declaration mentioned, and that the defendant indorsed it for the purpose of having it discounted in the plaintiff's bank, to take up a note for $1,457, indorsed by the defendant, and due on the day of the date of the note in question. They also find that there was no other note drawn by H. Peake and indorsed by the defendant, discounted at the said bank, or in that bank for collection or otherwise. That the plaintiffs transacted their banking business in Alexandria, D. C., and the defendant resided in Washington, D. C., seven miles distant. That the mail for Washington closed in Alexandria at 9 o'clock, P. M., and arrived at Washington on the next day. That the banking hours were from 9 o'clock, A. M., to 3 o'clock, P. M. That notes not paid before 3 o'clock of the day on which they are payable are usually delivered out to the notary at 3 o'clock, and returned with the protest to the bank on the next morning. That on the 25th of August, 1829, being the third day of grace on the note, it was by the teller of the bank presented, at the bank, to the cashier for payment, who examined the books of the bank, and found that the maker had no funds there, and stated that fact to the teller, and that no other person appeared for him, at the bank, to pay the note. That on the closing of the bank on that day, it was taken out by a notary-public for protest, and was, on the morning of the 26th of August, 1829, (being the next day,) returned to the bank with the protest, which was drawn up on the said · 26th of August. That on the same 26th of August, the notary, on behalf of the bank, put into the post-office at Alexandria, long before the closing of the mail of that day, a letter written by him, addressed to the defendant at Washington, intending by the said letter, to give him notice of the non-payment of the said note; which letter was post-marked at the post-office in Alexandria, "Alex'a. Ca. Aug. 26," and is in the words and figures following: "Alexandria, August 26, 1829. Sir,—A note drawn by Humphrey Peake, for fourteen hundred and fifty-seven dollars, dated Alexandria, 23d June, 1829, payable to you or your order, at the Bank of Alexandria, sixty days after its date, by you indorsed, and for the payment of which you are held liable, is protested for non-payment, at the request of the president, directors, and company of the said bank. Respectfully, your obedient servant, B. C. Ashton, Notary-Public. Thomas Swann, Esq., Washington City;" which letter was received by the defendant in due course of mail, on the 27th of August, 1829. The jury also find the protest in haec verba; which recites truly .the note in the declaration mentioned, which was for $1,400, and not for 1,457 dollars, as stated in the.notice, although the figures 1,457 are written on the margin. They also find that no part of the note has been paid.

The cause was argued for the plaintiffs, by Mr. Taylor, who cited Lenox v. Roberts, 2 Wheat. [15 U. S.] 377; Bussard v. Levering, 6 Wheat. [19 U. S.] 102; Lindenberger v. Beall, 6 Wheat. [19 U. S.] 104; Chitty, (Ed. 1822,) p. 402; Langdale v. Trimmer, 15 East, 291; Scott v. Lifford, 9 East, 347; Robson v. Bennett, 2 Taunt. 388; Bank of U. S. v. Carneal, 2 Pet. [27 U. S.] 543.

And by Mr. Swann, pro seipso.

CRANCH, Chief Judge, after stating the substance of the special verdict, delivered the opinion of the court, (THRUSTON, Circuit Judge, absent.) These seem to be all the material facts found by the jury; upon which two questions are made: 1. Had the defendant any notice of the non-payment of the note upon which the suit is brought? 2. If he had, was it due notice?

1. If the same variance had existed in the declaration, it would have been fatal to the plaintiffs' cause; the note could ·not have been given in evidence. The variance is substantial; a note for $1,400 is not a note for $1,457. The verdict states circumstances from which a jury might infer that the defendant understood it to be the note for $1,-400 which he had indorsed, but they do not draw the inference; and the court is not permitted to draw any inference of fact from the facts found by the jury. The court cannot say, therefore, that the defendant had any notice of the non-payment of the note mentioned in the declaration.

2. But if· he had any notice, we think it was too late. In Lenox v. Roberts, 2 Wheat. [15 U. S.] 373, it was decided, "that a demand of payment should be made upon the last day of grace, and notice of the default of the maker be put into the post-office early enough to be sent by the mail of the succeeding day. This was not done; and although it is found that it was the usage of the banks in Alexandria "to deliver out to the notary, on each day at 3 o'clock, all bills discounted by or to be paid at such banks, which became due on such day, for

demand and protest; and for the notary to return such notes, with the protests for non-payment, to the said bank, on the morning of the succeeding day, soon after the bank opened," yet it is not stated, as part of the usage, that the notary should not give notice to the parties until after the return of the notes to the bank. The notice, in the present case, was given by the notary; and might as well have been given on the 25th as on the 26th. He knew that the note had been dishonored at 3 o'clock on the 25th, and the mail did not close until 9 o'clock in the same evening. According to the decision in Lenox v. Roberts, [supra,] therefore, we think the notice was too late. [Supra.] Upon both grounds, therefore, we are of opinion that the judgment on the special verdict should be for the defendant. Reversed. [Bank of Alexandria v. Swann,] 9 Pet. [34 U. S.] 33.

[NOTE. This decision was reversed in Bank of Alexandria v. Swann, 9 Pet. (34 U. S.) 33, —Mr. Justice Thompson delivering the opinion,—on the ground that notice of dishonor mailed in Alexandria on the day after the note was protested, being the day after the last day of grace, was given in due time. "The law does not require the utmost possible diligence in the holder, in giving notice of the dishonor of the note. All that is required is ordinary, reasonable diligence, and what shall constitute reasonable diligence ought to be regulated with a view to practical convenience and the usual course of business. * * * The law, generally speaking, does not regard the fractions of a day; and, although a demand of payment at a bank was required to be made during banking hours, it would be unreasonable, and against * * * the usage of the bank at that time, to require notice of non-payment to be sent to the indorser on the same day." Further ground of reversal was that a notice of dishonor, which describes a note as for $1,457, the true amount being $1,400, but the figures "1,457" being set down in the margin of the note, is sufficient, when the description is in other respects correct, and the defendant has indorsed no other note by the same maker, nor has any other such note been discounted by the bank. or placed there for collection or otherwise, since there is no room for any mistake by the indorser as to the identity of the note.]